UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DEBORAH MCCAULEY, ET AL. | CIVIL ACTION NO. 15-2723 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CENTENARY COLLEGE OF LOUISIANA, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is Defendants' motion for summary judgment. [Record Document 47]. For the reasons given below, the motion is **GRANTED**.

### I. Background

Charles Marcus McCauley ("Marcus")[1] was shot and killed by campus police officers on the grounds of Centenary College ("Centenary"). [Record Documents 1 at 3 and 47-2 at 2]. Marcus left behind three minor children, L.M., V.M., and K.M., all of whom are in the sole custody of their mother, Jennifer Spears ("Spears"). [Record Document 47-2 at 1–2]. Spears and Marcus were divorced at the time of his death; the divorce decree prohibited Marcus from having any contact or communication with Spears or the children. [*Id.*].

Deborah McCauley ("McCauley"), Marcus's mother, filed this action asserting a variety of federal and state law claims against Centenary and its employees. [Record Document 30 at 12–19]. Before filing suit in this Court, McCauley petitioned the First

---

[1] This Court refers to Marcus McCauley by his given name to avoid confusion with Plaintiff.

1

Judicial District Court in Caddo Parish ex parte for provisional appointment as the children's tutor. [*Id.* at 2]. After being served with McCauley's complaint in this suit, Defendants appeared in state court to challenge McCauley's appointment; in support, they produced an affidavit from Spears objecting to the provisional tutorship and to her children's participation in this suit. [Record Documents 32-3 and 32-4 at 7–9]. Although the trial court rejected Defendants' arguments, the Second Court of Appeal reversed course, concluding that Spears was the children's natural tutor and that her objection to McCauley's provisional tutorship required that the appointment be vacated. [Record Document 47-4 at 7–9]. The Louisiana Supreme Court denied McCauley's application for a supervisory writ. [Record Document 47-6].

Because procedural capacity in federal court is determined by state law and because state court proceedings to determine McCauley's right to sue on her grandchildren's behalf were ongoing, this Court stayed the case to allow the Louisiana courts to resolve the state-law question. [Record Document 41]. After being notified that the state court proceedings had concluded, this Court lifted the stay and ordered Defendants to file a new motion for summary judgment. [Record Document 44]. Defendants filed the instant motion, and McCauley has objected. [Record Documents 47 and 51]. As Defendants have filed a reply, this matter is ripe for decision. [Record Document 54].

II. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous"

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case

that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## III. Application

McCauley's opposition did not include a statement of material facts on which genuine issues exist for trial. Therefore, all of Defendants' assertions in their statement of material facts, [Record Document 47-2], are deemed admitted, *see* W.D. La. R. 56.2.

### A. McCauley's Standing

Only plaintiffs with standing may "maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982), *abrogated in part on other grounds by Bowen v. Kendrick*, 487 U.S. 589 (1988); *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504

---

law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely

4

U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). An injury is an "invasion of a legally protected interest" that "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 & n.1).

The right of action for a wrongful death belongs first to the decedent's surviving spouse and children. La. Civ. Code Ann. art. 2315.2 (2010). Because Marcus's children are living, McCauley has no right of action. Indeed, she has affirmatively represented to this Court that the minors "are the only individuals who have a right to bring an action against [D]efendants for [their father's] wrongful death." [Record Document 36 at 15]. Therefore, to the extent that McCauley maintains that she may appear as a plaintiff in her own right, her claims must be dismissed for lack of standing.

### B.     McCauley's Capacity to Sue on the Minors' Behalf

Federal district courts determine a person's capacity to sue by the law of the state in which the court is located. Fed. R. Civ. P. 17(b)(3). In this case, the right of action belongs to Marcus's children. *See* La. Civ. Code Ann. art. 2315.2. Because the children are unemancipated minors, they lack procedural capacity to sue on their own behalf. La. Code Civ. Proc. Ann. art. 683(A) (Supp. 2019). Unless an unemancipated minor is in the legal custody of the Department of Children and Family Services, only a parent or tutor may sue to enforce that minor's rights. *Id.* art. 683(B)–(D).

Following the termination of a marriage, children of that marriage are placed under the authority of a tutor. La. Civ. Code Ann. art. 246 (2016). Tutorship initially devolves on a

on it accordingly.

natural tutor. *Id.* arts. 248, 250. A parent with sole custody is the natural tutor of her children. *Id.* art. 250. Similarly, a surviving parent with custody becomes the natural tutor following the other parent's death. *Id.* Because Marcus is deceased and because Spears has sole custody of the children, she is the children's natural tutor. [Record Document 47-2 at 2].

Recognizing this fact, the Second Circuit vacated McCauley's appointment as the children's provisional tutor. [Record Document 47-4 at 11–12]. McCauley's position is somewhat confusing. She spends a significant portion of her opposition memorandum arguing that the Second Circuit's decision was incorrect, [Record Document 51 at 15–25], before asserting that "there is no need to give any thought to whether or not the state court's ruling vacating the appointment of . . . McCauley was a good ruling or not," [*id.* at 25]. This Court agrees with the latter sentiment. Louisiana courts are in a much better position to interpret and apply Louisiana's tutorship law than is this Court. As a result of the Second Circuit's ruling, McCauley is no longer the children's provisional tutor. Without tutorship authority, McCauley cannot rely on her prior appointment to maintain this suit on the children's behalf.[2]

### C. Appointment of McCauley as a Representative

McCauley now suggests that this Court appoint her to represent the children in this

---

[2] Defendants also argue that allowing McCauley to proceed with this suit would violate the *Rooker-Feldman* doctrine. [Record Document 47-3 at 8]. That doctrine is inapplicable. *Rooker-Feldman* applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered <u>before</u> the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). As the Second Circuit's vacature of the provisional appointment order occurred during the pendency of the case before this Court, *Rooker-Feldman* does not apply.

matter. [Record Document 51 at 26]. A district court can appoint a representative to maintain a suit on behalf of an unrepresented minor. Fed. R. Civ. P. 17(c)(2); *see Susan R.M. ex rel. Charles L.M. v. Ne. Indep. Sch. Dist.*, 818 F.2d 455, 458 (5th Cir. 1987). In similar situations in which a grandparent sued on a grandchild's behalf without a parent's participation, this Court ordered the parent to appear and join in the case; if the parent did not, this Court stated that it would appoint the grandparent as a next friend. *See Smith v. Goree*, No. 17-cv-482, 2018 WL 752354, at *3 (W.D. La. Feb. 6, 2018); *Rice ex rel. CIR v. Cornerstone Hosp. of W. Monroe*, No. 13-cv-0362, 2013 WL 3557913, at *1 (W.D. La. July 11, 2013). However, in *Rice*, the mother's views were unknown, *see* 2013 WL 3557913, at *1, and in *Smith*, evidence suggested that the child's mother supported the suit, *see* 2018 WL 752354, at *1. Here, by contrast, Spears's opposition could not be clearer:

> I do not believe that the filing of any suit against Centenary College or its security officers is in the best interest of my children. In fact, I believe that such a suit is meritless. Marcus McCauley was violent and delusional. On more than one occasion, he stated to me that he wanted to 'kill himself' by having a gunfight with the police. . . . . I will not support such a suit and I desire that the suit already filed by Deborah McCauley, purporting to act on behalf of my children, be dismissed.

[Record Document 47-7 at 3–4].[3] In light of her clearly articulated wishes, this Court will not force continued litigation upon Spears or her children.

In an attempt to defeat this result, McCauley argues that Rule 17(c)(2) of the Federal Rules of Civil Procedure requires this Court to appoint a person to represent L.M., V.M, and

---

[3] McCauley asks this Court to disregard Spears's affidavit as hearsay. [Record Document 51 at 25]. Affidavits are inherently hearsay but are acceptable evidence in support of a motion for summary judgment. Fed. R. Civ. P. 56(c)(1)(A). Hence, McCauley's request is meritless.

K.M. [Record Document 51 at 26]. Although the rule states that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action," Fed. R. Civ. P. 17(c)(2), McCauley urges an unreasonable interpretation. In effect, she asks this Court to hold that once suit is commenced in federal court by any person purporting to represent the interests of a minor, the district court must always appoint a representative for the minor even if the minor's legal guardian has made her opposition to the suit clear. [Record Document 51 at 25–26]. A brief thought experiment will demonstrate why this interpretation is wrong. Imagine that it was not the children's grandmother but rather a stranger who filed this suit after reading about Marcus's death in the newspaper and using public records to determine the children's identity. Under McCauley's theory, this stranger could bring a suit in federal court purporting to act on the minors' behalf. This individual would then be able to force the federal court to appoint a representative. This could all happen, per McCauley, without the involvement or even awareness of the children or the surviving parent and even over the latter's objection. [*Id.* at 26]. This cannot be the correct interpretation of Rule 17.

The caselaw McCauley cites does not convince this Court otherwise. *Travelers Indemnity Co. v. Bengston* examined whether a judgment obtained on behalf of minor children by a federally appointed guardian ad litem was null because state law required that such actions be brought by a tutor. 231 F.2d 263 (5th Cir. 1956). Although the Fifth Circuit concluded that the judgment was valid, this case's relevance is unclear because McCauley is neither the children's tutor nor their guardian ad litem. *Kile v. United States*, 915 F.3d 682 (10th Cir. 2019),

*Burke v. Smith*, 252 F.3d 1260 (5th Cir. 2001), and *Chrissy F. ex rel. Medley v. Mississippi Department of Public Welfare*, 883 F.2d 25 (5th Cir. 1989), concern actual or potential conflicts of interest between a parent and a minor child. McCauley offers no evidence of any conflict of interest beyond an unsupported allegation that Spears has given her children a "tainted view" of their father. [Record Document 51 at 27]. *United States v. Simmons* concerns appointment of a guardian ad litem to represent a minor <u>defendant</u> in a civil action, No. 4:13-cv-066, 2013 WL 5873366 (N.D. Tex. Oct. 31, 2013); here, of course, the minors appear as plaintiffs.

Finally, McCauley cites a series of cases concerning a representative's authority to settle or compromise a case on a minor's behalf: *Carter v. Fenner*, 136 F.3d 1000 (5th Cir. 1998); *Johnson v. Ford Motor Co.*, 707 F.2d 189 (5th Cir. 1983); *Halloway v. SPM Resorts, Inc.*, No. 16-88, 2019 WL 177927 (D.V.I. Jan. 11, 2019); and *Baladez v. Gen. Motors, LLC*, No. 17-cv-0194, 2018 WL 6737978 (N.D. Tex. Dec. 18, 2018). Louisiana law requires a tutor to obtain judicial approval before compromising a minor's litigious rights. La. Code Civ. Proc. Ann. arts. 4265, 4271 (1998). Although one could argue that refusing to prosecute a lawsuit filed by a third person on a minor's behalf is a de facto compromise, a refusal in these circumstances is more similar to a decision not to file a lawsuit at all than it is to a settlement. After a person is injured through another's wrongful conduct, a primary decision that the injured person must make is whether or not to sue. When minors are injured, Louisiana law delegates this decision to those minors' parents and tutors. No authority that this Court has located supports a conclusion that a tutor must petition for court approval to refrain from filing a lawsuit.

In fact, a related provision of Louisiana's Code of Civil Procedure suggests the opposite conclusion. Typically, a natural tutor must qualify for the office by taking an oath, causing an inventory to be taken, and either executing a legal mortgage in the minor's favor or posting security. La. Code. Civ. Proc. Ann. art. 4061 (1998). However, a surviving parent or a parent with sole custody can bring a tort suit to enforce a minor child's rights without first qualifying as a tutor. *Id.* art. 4061.1(A)–(B) (Supp. 2019). If a parent with sole custody can sue on her children's behalf without completing the legal formalities designed to protect their interests, a logical corollary is that such a parent can refuse to bring a suit without a court's permission. Spears made her decision when she declined to file a lawsuit before this matter facially prescribed. This Court will not override her decision by appointing McCauley as a next friend in order to prosecute this action.

It is clear that McCauley feels that maintaining this suit is in the children's best interest, but under the law, that decision is not hers to make:

> [A]s long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Troxel v. Granville*, 530 U.S. 57, 68–69 (2000) (plurality opinion) (citing *Reno v. Flores*, 507 U.S. 292, 304 (1993)). Parental fitness is presumed. *See id.* at 69. There is no evidence that Spears is unfit to raise her children, and the divorce decree provides that she has the "exclusive . . . right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children." [Record Document 47-7 at 11]. Declining to file a lawsuit is certainly a "decision[] of substantial legal significance." [*Id.*].

Judge Learned Hand once observed, "[a]fter now some dozen years exposure I must say that as a litigant, I should dread a lawsuit beyond almost anything else short of sickness and death." *Bates v. Hunt*, 3 F.3d 374, 377 (11th Cir. 1993). If one of America's foremost jurists held such negative view of litigation, one can hardly fault a mother for declining to involve her children in that process. Whether it is in a child's best interest to participate in the "clumsy, time-consuming business" of civil litigation is a question best answered by the adult already designated to make best-interest determinations. *Bates*, 3 F.3d at 377 (quoting Chief Justice Warren Burger). Under Louisiana law, that person is Spears.

Parental authority is not unlimited. And courts do have an obligation to protect children from harm. This Court might elect to intervene if evidence suggested that Spears's decision not to proceed with this lawsuit was actively and immediately harming the children[4] or that the children themselves felt a need to vindicate the loss of their father. As nothing in the record suggests that either is the case, this Court will defer to Spears's judgment.

IV. <u>Conclusion</u>

In light of Spears's determination that proceeding with this suit is not in her children's best interest, Defendants' motion for summary judgment [Record Document 47] is

---

[4] McCauley also argues that if she is not appointed to maintain this suit the children will be deprived of "the opportunity to learn the truth about what they lost." [Record Document 51 at 27]. It is unclear how discovery of evidence related to Marcus's death will help the children understand "the truth about their father free from a tainted view held and promulgated by their mother." [*Id.*]. McCauley's ability to be involved in her grandchildren's lives and to teach them about their father is not the issue before this Court and is properly addressed through state court proceedings. *See, e.g., Ex parte Burrus*, 136 U.S. 586, 593–94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.").

**GRANTED**. This matter is **DISMISSED WITHOUT PREJUDICE**.

A judgment consistent with this opinion will issue separately.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 23rd day of __May__, 2019.

```
_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE
```